Case No. 22-5100, Tlalpan Nation, Iqbalans v. United States Department of the Interior and Debra A. Hillings in her official capacity as Secretary, United States Department of the Interior. Mr. Gordon for the Iqbalans, Mr. Cobble for the Iqbalese. Mr. Gordon, good morning. Good morning, and may it please the Court. Under the Indian Self-Determination Act, federal agencies transferred to tribes the responsibility and the funding for providing designated programs to tribal members. Almost all of these programs or services are permanent in nature and require ongoing, dependable funding. In 1988, Congress amended the Act for the above purpose of preventing federal agencies from unilaterally reducing the established amount of annual funding. Congress provided that the amount of funds provided under a self-determination contract shall not be reduced in subsequent years, except in five circumstances, none of which is applicable here. Can you start with kind of explaining how a contract renewal proposal works? And specifically, does a tribe submit a renewal proposal and the first annual funding agreement for that proposal at the same time in one package? Yes, Your Honor. So that's what happened in 2017. And are they approved together at the same time? Yes, Your Honor. And in fact, and I think this will make things clear, the annual funding agreement, or AFA as it's frequently called, is the key part of the contract that sets forth both of the services being provided and the amount of funding that's going to be provided. The rest of the contract are the standard contract term provisions. Is the annual funding agreement a successor annual funding agreement in that situation? We've taken the position, Your Honor, that a successor annual funding agreement is under the existing contract and so is governed by the regulation at 900.32. That is why there's a separate regulation at 900.33 that deals with renewal contracts and has the exact same effect. So let me ask a step back from the text and kind of ask a more pragmatic question. I think on 900.33, you're strong. At the same time, I wonder, imagine that what had happened with the 2014 original annual funding agreement had been that instead of going from a million to 15 million, which was 17 million, which was a large increase, it's about 13 times more than the government says they think you deserve. Imagine that it had gone from 1 million to a billion. Would you be making all the same arguments? Would we have to do all the same things that you say we have to do here? The law would be the same. But Congress provided a trillion. But, Your Honor, if I may, Congress provided the solution when it amended the statute in 1988. When it created 5325B, it provided that one way that an agency could reduce funding was if they go back to Congress and get permission. And then a nice appropriation bill in the language of the appropriations. That comes up, appropriations, as Congress well knows, come up every year. Well, so under that theory, all they have to do is get Congress to do what Congress hardly ever does. Well, if it's truly a windfall, as the government argues, then Congress would do it, I submit, certainly if it was a million or a trillion. Again, I recognize this is pretty far afield from the text of the regs, and I'm pretty with you on the text of the regs. But what political incentive would Congress have in this situation to take 15 million extra dollars away from the Navajo tribe? The Navajo Nation, after the district court in 2020 found that they had a legitimate need for all of those funds? I don't think there's any political will to do that, Your Honor. And I'm standing here saying that my client, the Navajo Nation, deserves every penny of those funds. Because the funding level prior to 2014 was covering only about 10% of the actual cost of running the courts that the Navajo Nation sources. Let's imagine the government is right that you deserve 1.2 million or 1.5 million because of the kind of clerical error that happened during the government shutdown. You're getting 17 million a year. That's 17 million, or it's 15 million extra per year. It's 15.7 million, Your Honor. I've lived with these numbers for a long time. I heard in this case in 2016 before the district court. 15.6 million. And there is a part of the statute that says, maybe it's a brag as well, that if the appropriations are not there, then I guess there would be an across the board cut. That's correct, Your Honor. So the people who would kind of pay the cost, be hurt by the windfall, if it's a windfall, would be all of the other tribes whose budgets would be cut in order to pay for the 13 times more funding that you're receiving compared to what the agency says you're entitled to. And if it was a windfall and unfair, then those tribes might complain and create more political will. Go back to your question. But no other tribe, my knowledge, has complained about the Navajo Nation getting adequate funding for its court system. They would probably complain if it were a billion. They might, Your Honor. But if it were a billion, I think this case wouldn't be here. Unless the court has further questions, I'll submit and reserve any time. All right. Thank you, Mr. May I please support? I'm with the Department of Justice representing the Department of the Interior and the Secretary of the Interior in this case involving the Indian Self-Determination and Education Assistance Act, known as ISEA. The district court correctly held that neither the ISTA statute nor the regulations entitled the tribe to a permanent additional award of approximately $15.7 million each year in perpetuity. I'm not sure it's merely because of the clerical mistake. It's a combination of the clerical mistake and the reg 933 where you have deliberately tied your hands and assume something you probably don't want me to assume. But assume that they're right about how we read. We should read 933. Why? Why would you all have done that to yourselves? Well, the the it may well be that the that sort of that the regulation is is is not not optimal from from the government standpoint. But the regulations were that were enacted in part in with the the participation and involvement of the tribes and that and this was the agreed upon language. And this is one of the problems here in terms of the agency trying to to correct the this the regulatory problem on its own, because under under the statute, it has to confer with with the tribe and they have to be have involved participation. So I understand the the policy behind requiring the agency to confer. That seems appropriate. I think there was something in the briefing that the advisory committee that negotiated this added 60 something people on it. 40 something were representatives of the tribes. It seems like your answer to the question is the agency got into this mess because the regulator more or less abdicated its regulatory responsibilities to the regulated party. Not surprising that the regulated party drafted a regulation that's pretty good for them. Well, your honor, it is it's obviously the regulatory process is collaborative, but I certainly would. Well, first of all, I, as you indicated, I, I disagree with respect to the to the interpretation of 900 point point thirty three. And we believe that that the focus of the original Navajo Nation opinion was solely on on the on the deemed approval regulation in Navajo one. And that and and while the district court held and we don't agree that that that did that apply with respect to all subsequent annual funding agreements under the initial contract. We do not believe that that nine hundred point thirty three stands for the proposition that the that the that it applies to to a successor contract. I understand the argument and maybe maybe you're right about how we should read the reg. If you're wrong, if we rule against you in this case, does that mean that the tribe is just going to get fifteen point six million extra dollars every year forever? Or is there a way that you all will fix that? Well, I again, the the the only the only parent solutions would be either regulatory change. And then the tribes really they have no incentive to to to to agree to such a change or or congressional action, which is, your honor, pointed out seems is very, very difficult. So why why would it sounds like now you're saying that tribes have a veto on regulatory change? Why is that? Well, it's not a veto, but it is given given the language of it's I believe it's fifty three, twenty eight, twenty five U.S.C. Fifty three, twenty eight. It does emphasize that there that the that the secretary has to confirm and the tribes are to have to have involved participation in the process. So it's it doesn't provide a veto per se, but it certainly it certainly suggests that the that the tribes are have a significant voice in the formulation of the regulations. So this is it's it's a it's basically a a a an insoluble conundrum unless the unless the district court is correct, as we believe that it doesn't extend to the to a successor contract. It's insoluble, again, if your version of conferring with the tribes is the right version. But I mean, I confer with my folks on every case. I don't let them decide the case. I understand your honor, and it's. Yeah. But we don't we don't think that the that the the secretary should really should have to go there because we believe that the that both the statute and the and the regulations or the regulation concerning the contract, which is the only one applicable here, renewal contract are clear that the, the, the, the relevant amount for purposes of the, the annual, the, the next contract would be the initial amount with the initial secretarial amount, which was adopted in this case in twenty twelve in the earlier contract. And then that that doesn't the subsequent the subsequent problem started in twenty calendar year, twenty fourteen and continue through the first through the end of the first contract. No longer comes into play because the relevant contract, the relevant annual funding agreement is the one that was part of the original of the twenty twelve contract. And that was that was what was renewed in in twenty seventeen. Both the district court and this court are normally bound by the Indian canon. In this case, it may be even stronger since they can be identified in the governing regulation here. Is the district court's decision consistent with that? And your honor, we believe it is because we we agree with the district court that the that the really that that the only the only sensible reading is the one that of both the statute and the regulations is the is the one that that respects the, the, the, the role of the secretarial amount, which is the crucial, the crucial figure for purposes of the of of funding. The tribe would say that the secretarial amount is the amount that was approved in last year's previous year's agreements. And you would say that it goes all the way back to the original with respect to the contract. Yes, that's right. And the, the, again, the, the, the annual funding, the, the funding amount is clearly tied to the secretarial amount, which is the amount that the secretary would have expended on the program. And the fact that that changed because the secretary made the mistake, the fact that the annual funding agreement was increased in 2014 because of the secretary's, the secretary's failure to approve during the timeline. Excuse me, your honor to fail to disapprove during the statutory timeline, the secretary had a 90 day window to disprove and didn't do it. And well, that was that was this court's decision in Navajo Nation one, but we believe that that really should be it should be cabin to to the to the original contract and should not be continued in perpetuity. Yeah, there are no further questions I would urge the court to affirm the judgment of the district court. All right, thank you. Does Mr Gordon have any time? Council had 3 minutes and 30 seconds. I just want to make the point that the tribe here wins, not only because 933, but the 933 says what it does because the statute. Oh, 5325 B, which includes. The agency from reducing funding. And also 5321 a. Which says explicitly that when you are closing a new contract or a little contract. The secretary must agree to that contract. Unless the funding exceeds the amount of funding that's established under 5325, a secretarial amount and contracts. And we absolutely are of the view that that secretarial amount as of 2017 was 17Million dollars. And the agency's own regulation by that, if you have a deemed approved contractors, as this court held in 2014, those funds shall be added to the secretarial amount under 5325 a. If we disagree with you about. Your argument that the statute requires. This additional. Or put another way, the statute requires the agency to approve. The 2017 annual funding. You still win. If 933 requires agency to approve. Right, that's correct. But I want to emphasize that we don't think that the secretary just sort of fell down on the job when 933 was promulgated. We think that that regulation says what it says, because that's what the statute required. Thank you.
judges: Henderson, Walker, Sentelle